## WOOD v. UNITED STATES.
### No. 42818.

Court of Claims.
Jan. 11, 1937.

Raymond F. Garrity, of Washington, D. C., for plaintiff.

George W. Billings, of Washington, D. C., and Robert H. Jackson, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WILLIAMS, Judge.

Plaintiff sues to recover the sum of $7,690.67 income taxes for the year 1919, together with interest thereon.

It is contended by plaintiff that the certificate of overassessment delivered to him on September 30, 1928, constituted an account stated in his behalf for the sum of $7,690.67, and the suit is based on such account. It is conceded that the plaintiff overpaid his taxes for the year in the amount claimed, and, if the certificate of overassessment constituted an account stated, plaintiff is entitled to recover, as suit was instituted within six years after the delivery of the certificate.

The defendant contends (1) that the certificate of overassessment did not constitute an account stated, and (2) that a refund of an overpayment of taxes for the year 1919 was barred by the statute of limitations on the date of the issuance of the certificate. Defendant's contention in respect to the bar of the statute of limitations will be first considered.

The relevant facts disclose that plaintiff duly filed his income tax returns for the years 1917, 1918, and 1919 and paid the taxes due thereon. For each of the years he took a deduction of $20,000 for losses claimed to have been sustained during those years in connection with a rock-crushing plant. Upon an audit of the returns for the three-year period the Commissioner disallowed the deduction for each of the years and on March 14, 1925, made additional assessments for each of the years. Plaintiff, upon receipt of notice and demand from the collector for the additional taxes referred to, filed claims for the abatement of the taxes. After consideration of the claims for abatement of the taxes, the Commissioner on October 23, 1925, issued his so-called sixty-day letter advising plaintiff of the final determination of his tax liabilities for the years 1917, 1918, and 1919. The sixty-day letter disclosed deficiencies for the years 1917 and 1918 and an overassessment for 1919. The letter advised plaintiff that $16,888.99 of the assessment for 1919 would be abated and that the balance was barred from allowance by the statute of limitations, "inasmuch as no waiver or claim for refund was filed prior to March 15, 1925." Plaintiff thereupon, on December 21, 1925, filed a petition with the Board of Tax Appeals for a review of the Commissioner's determination of deficiencies for the years 1917 and 1918 and on March 13, 1926, filed a claim for refund for the year 1919. The Board of Tax Appeals decided the appeals for the years 1917 and 1918 on August 9, 1928. The Board's decision was based upon a stipulation entered into by the plaintiff and the Commissioner as to the tax liability for the years 1917 and 1918, which stipulation also agreed upon the tax liability for the years 1919 and 1920. The Commissioner then adjusted the taxes for the years 1917 and 1918 to conform to the Board's decision and readjusted the 1919 taxes to conform to the stipulation in respect to the tax liability for that year, and on August 31, 1928, issued a certificate of overassessment for the year 1919, upon which suit is brought, it being delivered to plaintiff on September 30, 1928. On the certificate was an overassessment for the year of $24,579.66, of which amount it is stated $16,888.99 was allowable, and the balance of $7,690.67 was barred by the statute of limitations.

The facts further disclose that the Commissioner on January 24, 1925, requested plaintiff to file a waiver for the year 1919; that, plaintiff at that time being absent on a world cruise, his attorney in fact, under the authority of a power of attorney[1] then on file in the Bureau, executed on behalf of plaintiff the waiver requested by the Commissioner and presented it to the Bureau on February 1, 1925, and that the chief of the Personal Audit Division of the Income Tax Unit to whom it was presented refused to accept it, stating that under the regulations promulgated by the Commissioner it was necessary for the taxpayer himself to sign it in person.

[1] The power of attorney reads as follows:

"Know all you by these presents that I, Henry Stanley Wood, of Freeport, Maine, hereby constitute and appoint William C. Prentiss, of Washington, D. C., my true and lawful attorney, for me and in my name and stead, to represent and act for me before the Bureau of Internal Revenue and Treasury Department of the United States in any and all matters in which I am concerned and particularly in the matter of my income tax returns and assessment of taxes thereon, hereby granting unto said attorney full power and authority to act in and concerning the premises as fully and effectually as I might do if personally present.

"Witness my hand and seal this 11th day of Dec. A. D. 1923.

"[Signed] Henry Stanley Wood."

The statutory period within which plaintiff could file a claim for refund for the taxes for 1919 expired on March 15, 1925, unless he filed a waiver in respect of the taxes due for that year, in conformity with section 284(g) of the Revenue Act of 1926 (44 Stat. 66, 67), in which case the time in which he might file a claim for refund was extended to April 1, 1926. This section reads:

"*Credits and Refunds.* * * * If the taxpayer has, on or before June 15, 1925, filed such a waiver in respect of the taxes due for the taxable year 1919, then such credit or refund relating to the taxes for the taxable year 1919 shall be allowed or made if claim therefor is filed either on or before April 1, 1926, or within four years from the time the tax was paid."

The defendant, in support of its contention that the statute of limitations bars recovery, takes the position that the waiver executed by plaintiff's attorney in fact and presented to the Bureau on February 1, 1925, was invalid and did not operate to extend the statutory period beyond March 15, 1925, and that hence the refund claim of March 13, 1926, was filed out of time.

We think the waiver was valid. It was executed by plaintiff's attorney in fact under the power of attorney set out in the margin. While the power of attorney did not in precise words grant authority to Prentiss to execute and sign income tax waivers on behalf of plaintiff, undoubtedly such authority was included in the words: "particularly in the matter of my income tax returns and the assessment of taxes thereon, hereby granting unto said attorney full power and authority to act in and concerning the premises as fully and effectually as I might do if personally present." The power granted in these broad and sweeping words must be held to have authorized plaintiff's attorney to execute and file the waiver in question. Vanderlip v. United States, 6 F.Supp. 965, 79 Ct.Cl. 489.

In construing section 281(e) of the Revenue Act of 1924 (43 Stat. 301, 302), the language of which, except as to dates, is identically the same as the pertinent provisions of section 284 (g) of the 1926 act (44 Stat. 67), the Bureau of Internal Revenue (C.B. vol. IV, page 1) ruled: "As this section merely requires the filing of a waiver on or before June 15, 1924, it is evident that the taxpayer has done every-thing required of him when he files the waiver within the prescribed time. An acceptance of the waiver by the Commissioner is, accordingly, not necessary for the purpose of bringing the case within the provisions of this section."

Applying this construction of the 1924 act to section 284(g) of the 1926 act, and we think it is a correct construction, it is clear that when the plaintiff presented, within the time prescribed, a validly executed waiver to the Commissioner, he had done all that was required of him to secure the benefits offered by the section. He had filed a waiver within the meaning of the section which it was the plain duty of the Commissioner to receive and place in the files with the other papers in the case. The plaintiff cannot be deprived of the benefits afforded him by the statute because of the failure of the Commissioner to perform this duty. It was not necessary under the ruling of the Bureau that the Commissioner accept the waiver to bring it within the meaning of section 284 (g). The waiver, therefore, must be given the same force and effect as would have been accorded to it had it been accepted by the Commissioner and placed on file in the Bureau. It operated to extend the statutory period for the year 1919 to a date beyond the issuance of the Commissioner's sixty-day letter of October 23, 1925, and also beyond the date of the filing of the claim for refund, March 13, 1926. The Commissioner was therefore in error in his statement in the sixty-day letter that the overpayment for 1919 disclosed therein was barred from allowance by the statute of limitations.

While plaintiff's suit is not based on the Commissioner's disallowance of the claim for refund, his action in respect to the claim bears directly on the question of whether the allowance of the overpayment was barred by the statute of limitations on the date of the issuance of the certificate of overassessment, August 31, 1928. The Commissioner in his sixty-day letter, as we have seen, proposed deficiencies for the years 1917 and 1918, and disclosed an overassessment for the year 1919. The plaintiff filed his petition with the Board of Tax Appeals for a review of the Commissioner's determination in respect to the years 1917 and 1918. The appeal for 1917 and 1918 involved solely the income of a partnership from which plaintiff's income for those years and also for 1919 arose. It was therefore impossible to determine

plaintiff's correct income for 1919, and the resulting overassessment, until the Board had entered its decision in respect to the years 1917 and 1918, and the Commissioner took no further action in that respect until after the Board's determination of the tax liability for those years, August 9, 1928, when on August 31, 1928, he issued the certificate of overassessment for 1919 upon which suit is based, disclosing an overassessment of $24,597.66, and an overpayment of $7,690.67. However, while the appeal for the years 1917 and 1918 was pending before the Board, the Commissioner of Internal Revenue, on August 19, 1926, wrote plaintiff the following letter:

"Reference is made to your claims for the refunding of $10,634.14 and $32.19, income taxes assessed for the years ended December 31, 1919, and 1920, respectively.

"The records of this office indicate that a petition involving the above-mentioned years has been filed by you with the United States Board of Tax Appeals. Inasmuch as that body will determine your tax liability upon the basis of the petition, your claims will be rejected on the next schedule for your district to be approved by the Commissioner.

"The contentions set forth in your claims may, of course, be presented before the Board of Tax Appeals."

■ It is obvious that the Commissioner's letter was based on an erroneous assumption of fact, as the plaintiff did not file a petition with the Board of Tax Appeals from the Commissioner's determination of his tax liability for 1919 as disclosed in the Commissioner's sixty-day letter, nor did the Board at any time have jurisdiction to pass on the refund claim for that year. In these circumstances the Commissioner's rejection of the claim was of a tentative character at most. The only fair inference that can be drawn from the letter is that a final determination of plaintiff's tax liability for 1919 would await the outcome of appeals then pending before the Board for other years. It clearly was not the intention of the Commissioner to disallow the refund claim on the merits, and he did not do so, as shown by his statement to plaintiff: "The contentions set forth in your claims may, of course, be presented before the Board of Tax Appeals." The Commissioner, in fact, declined to consider and determine the con-tentions set forth in the claim for refund on the erroneous assumption that they would be considered and determined by the Board of Tax Appeals. This conclusion is inescapable when the Commissioner's letter is considered in connection with the fact that in a stipulation between the Commissioner and the plaintiff subsequently entered into in respect to the appeals then pending before the Board for the years 1917 and 1918 the tax liability for the years 1919 and 1920 was also recomputed, in which recomputation an overassessment of $24,579.66 was shown for 1919. The purported disallowance of the claim in these circumstances was ineffective and did not constitute a rejection of the claim within the meaning of the statute. Since this was the only action on the refund claim prior to the issuance of the certificate of overassessment on August 31, 1928, the claim was pending on that date, and the allowance of the overpayment shown in the certificate was not barred by the statute of limitations.

■ The defendant contends that the certificate of overassessment cannot be considered as an account stated importing a promise of payment on the one side and acceptance on the other, for the reason that plaintiff was advised in the certificate that a refund of the overpayment shown was barred by the statute of limitations. In other words, it is urged that the express statement in the certificate that the overpayment was barred from refund because of the statute of limitations negatives the implication of a promise on the part of the government to refund the amount of the overpayment, which is one of the essentials of an account stated. In support of its contention the defendant cites Stearns Co. v. United States, 291 U. S. 54, 54 S.Ct. 325, 78 L.Ed. 647, Daube v. United States, 289 U.S. 367, 53 S.Ct. 597, 77 L.Ed. 1261, and numerous decisions of this court in which the principles underlying an account stated are laid down. The facts in the cited cases are in each instance clearly distinguishable from the facts in the instant case. The certificates of overassessments in the cited cases show that all or portions of the overpayments shown had been credited against unpaid taxes for other years, claimed by the taxpayer to have been barred from collection when the credit was made. In each of the cases relied upon recovery was sought of amounts thus credited. The essence of the decisions is that all the items

appearing on a certificate of overassessment must be considered as making up the account and that a promise of the government to refund the overassessment shown in the certificate applies only to the balance remaining after the credits shown have been deducted. The rule is aptly stated in Holmes Manufacturing Co. v. United States, 6 F.Supp. 438, 439, 79 Ct.Cl. 263, where the court said:

"It is quite obvious there was no account stated in favor of plaintiff except for the balance shown. The amount of this balance was paid leaving nothing due as the account was stated. Plaintiff seeks to take the one item of the account which showed the amount of the overassessment and ignore the credits and the refund made on the other side of the account. We have repeatedly held that this cannot be done, and, without citing all of the many cases that support our holding would call attention particularly to R. H. Stearns Co. v. United States, 291 U.S. 54, 54 S.Ct. 325, 78 L.Ed. 647; Leisenring v. United States, 3 F.Supp. 853 [4 F.Supp. 993] 78 Ct.Cl. 171, certiorari denied [291 U.S. 682] 54 S. Ct. 558, 78 L.Ed. 1069; and Samuel Daube v. United States, 5 F.Supp. 769 [78 Ct.Cl. 754]."

The certificate of overassessment in the instant case sets forth (1) a total assessment for the year 1919 of $27,523.43, (2) a tax liability for the year of $2,943.77, and (3) an overassessment for the year of $24,579.66. It is then stated that $16,888.99 of the overassessment is allowable and that $7,690.67 is barred by the statute of limitations. The latter amount, which was an overpayment, was the balance struck in the account as stated in the certificate. There was then, and is now, no controversy between the parties as to the correctness of this balance. No credits are involved, and the only grounds on which the government seeks to retain the overpayment is that a refund thereof was barred by the statute of limitations when the certificate was issued, which is not the fact. In these circumstances the certificate of overassessment constituted an account stated of an overpayment of taxes by plaintiff in the sum of $7,690.67 for the year 1919, and an implied promise on the part of the government to refund it to plaintiff, notwithstanding the erroneous statement in the certificate that the refund was barred by the statute of limitations. Shipley Construction & Supply Co. v. United States, 7 F.Supp. 492, 79 Ct.Cl.

736; Frank H. Gage v. United States, 14 F.Supp. 500, 82 Ct.Cl. ——, decided May 4, 1936.

The plaintiff, having instituted this suit as upon an account stated within six years after the certificate of overassessment was delivered to him, is entitled to recover, and is hereby awarded judgment in the sum of $7,690.67, together with interest thereon as provided by law.