Renee R. BERRY, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 08–330 C.

United States Court of Federal Claims.

Feb. 13, 2009.

Renee R. Berry, pro se, plaintiff.

Gregg M. Schwind, Court of Federal Claims Section, Civil Division, United States Department of Justice, for defendant.

## OPINION and ORDER

BLOCK, Judge.

### I. INTRODUCTION

Plaintiff appears before the court, *pro se*, seeking a "within-grade [pay] increase" ("WIGI"), which she claims that her employer, the United States Patent and Trademark Office ("PTO"), wrongfully withheld from her. Initially, plaintiff appealed the PTO's WIGI determination to the Merit Systems Protection Board ("MSPB")[1], which subsequently concluded that it lacked jurisdiction over plaintiff's case. Plaintiff then took the fateful step of appealing the MSPB decision to the United States Court of Appeals for the Federal Circuit *on the same day* that she filed her complaint in this court. In response, defendant filed a RULES OF THE COURT OF FEDERAL CLAIMS ("RCFC") 12(b)(1) motion to dismiss plaintiff's claim in this court, arguing that 28 U.S.C. § 1500 divests this court of jurisdiction to hear plaintiff's claim. Section 1500 provides, in pertinent part, that "[this court] shall not have jurisdiction of any claim for or in respect to which

---

1. Congress created the MSPB, pursuant to the Civil Service Reform Act of 1978 ("CSRA"), Pub.L. No. 95–454, 92 Stat. 1111 (1978) (codified as amended in scattered sections of 5 U.S.C.), to adjudicate federal employee appeals of agency personnel actions. *See* 5 C.F.R. § 1200.1.

the plaintiff ... has pending in any other court any suit or process against the United States...."

██ Plaintiff does not dispute that her claim before this court is identical to her claim pending on appeal at the Federal Circuit. Defendant concedes, "for purposes of this motion that, but for the application of § 1500, this [c]ourt would otherwise have jurisdiction over [plaintiff's] claim." Def.'s Supp. Br. 2. Thus, with regard to the instant motion, this court need only decide whether plaintiff's appeal before the Federal Circuit was "pending" at the time plaintiff filed her claim in this court. Defendant argues that the Federal Circuit's decisions in *Harbuck v. United States,* 378 F.3d 1324 (Fed.Cir.2004) and *United States v. County of Cook, Ill.,* 170 F.3d 1084 (Fed.Cir.1999) stand for the proposition that claims filed on the same day are *per se* "pending" for purposes of § 1500.

For the reasons below, this court holds that *Harbuck* and *County of Cook* are easily distinguishable from the instant case and rejects defendant's proffered *per se* pending rule. However, because the court does not have sufficient evidence before it to decide the order of plaintiff's filings, the court withholds judgment on defendant's motion. Instead, the court will permit plaintiff a second opportunity to provide an affidavit (or some other legally cognizable evidence) detailing her sequence of filings. As explained more fully below, if plaintiff fails to provide such an affidavit, the court will grant defendant's motion and dismiss plaintiff's complaint.

Of course, resolving the possible application of § 1500 is only one piece of the jurisdictional puzzle. Assuming § 1500 does not apply, the court is concerned that it may, nevertheless, lack subject matter jurisdiction over plaintiff's claim. Accordingly, the court, *sua sponte,* raises these concerns below and orders the parties to submit supplemental briefing on the matter.

2. Federal employees may obtain judicial review of a MSPB final decision in the United States Court of Appeals for the Federal Circuit. 5 U.S.C. § 7703(a)(1), (b)(1).

## II. FACTUAL BACKGROUND

The following facts for this motion to dismiss are undisputed. Plaintiff was a patent examiner at the PTO, but was removed from this position on January 6, 2006. Def.'s Mot. to Dismiss Ex. 1 at 2. Plaintiff immediately filed a grievance with her union and the parties reached a settlement agreement on August 14, 2006. Compl. at ¶ 1; Pl.'s Resp. Ex. 2 at 5. Pursuant to the terms of this settlement agreement, the PTO reinstated plaintiff to her original position without backpay and retroactively placed her in leave without pay ("LWOP") status for the time between her disputed removal and her reinstatement. Pl.'s Resp. Ex. 2 at 1.

On October 15, 2006, the PTO initially granted plaintiff a WIGI. Compl. at ¶ 1; Def.'s Mot. to Dismiss Ex. 1 at 3. However, the PTO eventually concluded that plaintiff was not entitled to the WIGI because plaintiff had not fully performed the requisite two years of time in grade, citing her previous seven months of LWOP status. Compl. at ¶ 2; Def.'s Mot. to Dismiss Ex. 1 at 3. Plaintiff appealed the PTO's decision to the MSPB. Compl. at ¶ 5. The MSPB then dismissed plaintiff's appeal for lack of jurisdiction. Def.'s Mot. to Dismiss Ex. 1 at 4.

On May 5, 2008, plaintiff filed a timely petition for review of the MSPB's decision in the United States Court of Appeals for the Federal Circuit's [2] night box.[3] Def.'s Mot. to Dismiss Ex. 3. On the same day, plaintiff filed a complaint in this court, praying that "this [c]ourt exercise jurisdiction and grant her WIGI." Compl. at 1, 3. While both the petition for review at the Federal Circuit and the complaint in this court are date-stamped, neither is time-stamped. Def.'s Mot. to Dismiss Ex. 3; Compl. at 1. On July 7, 2008, defendant filed the instant RCFC 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. Def.'s Mot. to Dismiss at 1.

## III. DISCUSSION

██ Courts afford *pro se* litigants, like plaintiff, great leeway in presenting their

3. After the clerk's office closes on workdays, papers may be deposited until midnight in the night box at the court's garage entrance.

issues to the court. *See, e.g., Comer v. Peake,* 552 F.3d 1362 1368–69 (Fed.Cir.2009); *McZeal v. Sprint Nextel Corp.,* 501 F.3d 1354, 1356 (Fed.Cir.2007); *Forshey v. Principi,* 284 F.3d 1335, 1351 (Fed.Cir.2002). Accordingly, this court will not punish a *pro se* litigant "for [her] failure to recognize subtle factual or legal deficiencies in [her] claims." *Hughes v. Rowe,* 449 U.S. 5, 15, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980).

■■■■ Defendant has filed an RCFC 12(b)(1) motion to dismiss, arguing that § 1500 divests this court of jurisdiction to hear plaintiff's claim. Def.'s Mot. to Dismiss at 1. In assessing this motion to dismiss, the court accepts as true the complaint's undisputed factual allegations and construes the facts in a light most favorable to plaintiff. *Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir. 1989). Nevertheless, a *pro se* plaintiff retains the burden of factually establishing this court's jurisdiction by a preponderance of the evidence. *See Taylor v. United States,* 303 F.3d 1357, 1359 (Fed.Cir.2002) (citing *Thomson v. Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942)); *Giles v. United States,* 72 Fed.Cl. 335, 336 (2006); *Tindle v. United States,* 56 Fed.Cl. 337, 341 (2003); *see also Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

■■■ In its entirety, § 1500 provides:

The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, direct-

ly or indirectly under the authority of the United States.

Consequently, this court lacks jurisdiction "over the claim of a plaintiff who, upon filing, has an action pending in any other court 'for or in respect to' the same claim." *Keene Corp. v. United States,* 508 U.S. 200, 209, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993). A court determines whether another claim is "pending" from the moment in time when the suit in this court is filed. *Keene Corp.,* 508 U.S. at 207, 113 S.Ct. 2035; *Loveladies Harbor, Inc. v. United States,* 27 F.3d 1545, 1548 (Fed.Cir.1994).

Defendant has cited *Harbuck,* 378 F.3d at 1328–29, which in turn cites *County of Cook,* 170 F.3d at 1091, for the proposition that "[s]ection 1500 ... operates to bar claims filed in this [c]ourt simultaneously with the filing of the same claim in another." Def.'s Mot. to Dismiss at 3. *Harbuck* and *County of Cook* dealt with the interaction between 28 U.S.C. § 1500 and 28 U.S.C. § 1631, the federal court transfer statute.[4] *See Harbuck,* 378 F.3d at 1328; *County of Cook,* 170 F.3d at 1089–91. Both courts concluded that because § 1631 deems claims transferred to the Court of Federal Claims as being filed on the same day in which they were filed in the transferring court, such transferred claims are "simultaneously" filed with any nontransferred claims remaining in the transferring court. *See Harbuck,* 378 F.3d at 1328; *County of Cook,* 170 F.3d at 1090. The courts went on to hold that these "simultaneously" filed claims are "pending" with respect to one another, by operation of law, for the purposes of § 1500. *See Harbuck,* 378 F.3d at 1328; *County of Cook,* 170 F.3d at 1091.

But, in the case at bar, no transfer took place and, thus, § 1631 is not implicated. Plaintiff actually filed her claims in two separate courts on the same day. Unless plaintiff assumed the characteristics of an unobserved atom,[5] as a practical matter, it was physically

---

4. 28 U.S.C. § 1631 provides, in pertinent part, that "[w]henever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed ... and the action ... shall proceed as if it had been filed in ... the court to which it is transferred on the

date upon which it was actually filed in ... the court from which it was transferred."

5. In the strange world of quantum mechanics, unobserved atoms may occupy many positions in space at the same time. George Johnson, *In Quantum Feat, Atom Is Seen in 2 Places at Once,* N.Y. TIMES, February 22, 2000, at F 1.

impossible for plaintiff to file her claims "simultaneously."

Nevertheless, defendant argues that *Harbuck* and *County of Cook* stand for the broader proposition that claims filed on the same day are *per se* "pending" for purposes of § 1500. *See* Def.'s Supp. Br. 4–5. Defendant asserts that such a rule would best comport with the purpose of § 1500—"to avoid forcing the United States to defend multiple cases based upon the same operative facts in different fora." Def.'s Supp. Br. 5. Finally, defendant argues that "the interests of judicial economy and practicality are served by a rule that complaints are simultaneous if they are filed the same day, regardless of the precise time of day each was filed." Def.'s Supp. Br. 8. This court disagrees.

To be sure, the court in *Passamaquoddy Tribe v. United States* enunciated the same *per se* pending rule that defendant proffers here. *See* 82 Fed.Cl. 256, 263–72 (2008) ("the court is constrained to interpret *County of Cook* as stating a rule of law which applies § 1500 to same-day filings, regardless of the order of filing on that day"). However, the vast majority of recent decisions addressing this issue have rejected a *per se* bright-line rule. *See Nez Perce Tribe v. United States,* 83 Fed.Cl. 186, 191 (2008); *Salt River Pima–Maricopa Indian Cmty. v. United States,* No. 06–943L, 2008 WL 1883170, at *4–5 (Fed.Cl. Apr.24, 2008); *Ak–Chin Indian Cmty. v. United States,* 80 Fed.Cl. 305, 308 n. 4 (2008); *Breneman v. United States,* 57 Fed.Cl. 571, 575–77 (2003) (all holding that there is no *per se* "pending" rule with regard to same-day filings); *see also Lan–Dale Co. v. United States,* 85 Fed.Cl. 431, 434 (2009) ("[Plaintiff] has at least twice declined an invitation to show that the Court of Federal Claims suit was filed before the Arizona District Court suit, leaving the [c]ourt with no alternative but to find that the suits were filed simultaneously...."). Moreover, the decision in *Passamaquoddy Tribe* alternatively rested on a finding that the plaintiff filed its claim in district court before filing its claim in this court. 82 Fed.Cl. at 280 ("The court finds, by the preponderance of the evidence, that *Passamaquoddy DDC* was most likely filed before *Passamaquoddy COFC,* and by any interpretation of the term, was pending for the purposes of § 1500 when *Passamaquoddy COFC* was filed."). Thus, the *Passamaquoddy* court's *per se* bright-line pending rule was not necessary to the ultimate result in the case and can be read as mere dicta. *See In re McGrew,* 120 F.3d 1236, 1238 (Fed.Cir.1997) ("[D]ictum consists, *inter alia,* of statements in judicial opinions upon a point or points not necessary to the decision of the case.").

This court believes that the decisions rejecting a *per se* rule offer the better argument. The court is particularly persuaded by Judge Lettow's textual analysis of § 1500. In *Nez Perce Tribe,* Judge Lettow elaborated:

> Grammatically, the words "has pending" in [§ 1500] constitute a present participle which "convey[s] the same meaning" as the present perfect tense and "indicates action that was started in the past and has recently been completed or is continuing up to the present time." The Supreme Court's opinion in *Keene* is consistent with this grammatical understanding of the statutory usage because it refers to [§ ] 1500 as interposing a jurisdictional bar to a "claim of a plaintiff who, *upon filing* [with the Court of Federal Claims], has an action pending in any other court" respecting the same claim. Thus, the natural plain meaning of the words used in [§ ] 1500 calls for a determination of the order in which two or more suits were filed. If a suit were filed first in this court, [§ ] 1500 would not apply.

*Nez Perce Tribe,* 83 Fed.Cl. at 189 (internal citations omitted). This interpretation of "pending" is buttressed by *Tecon Eng'rs, Inc. v. United States,* wherein the Court of Claims held "that the only reasonable interpretation of [§ 1500] is that it serves to deprive this court of jurisdiction of any claim for or in respect to which plaintiff has pending in any other court any suit against the United States, *only* when the suit shall have been commenced in the other court *before* the claim was filed in this court." 170 Ct.Cl. 389, 343 F.2d 943, 949 (1965) (emphasis added). And, of course, *Tecon* "remains good

law and binding on this court." *Hardwick Bros. Co. II v. United States,* 72 F.3d 883, 886 (Fed.Cir.1995).

While this court agrees with defendant that one of the purposes of § 1500 is "to protect the United States from having to defend two lawsuits over the same matter simultaneously," *County of Cook,* 170 F.3d at 1090,[6] the court cannot agree that defendant's proffered rule would promote this goal. As it stands now, those "in the know" simply file two lawsuits—"the first in this court and a second, on a later date, in the district court.... For such individuals, [§ ] 1500 precludes nothing in its own right, but acts only as a stoplight governing the sequential filing of two or more lawsuits." *Griffin v. United States,* 85 Fed.Cl. 179, 192–93 (2008); *see Ak–Chin Indian Cmty.,* 80 Fed.Cl. at 308 n. 2 ("The 'has pending' language ... simply 'forces' plaintiff to file a complaint that could be perceived within the ambit of [§ 1500] in the Court of Federal Claims before filing any related complaint in a federal district court."); *d'Abrera v. United States,* 78 Fed.Cl. 51, 56 n. 10 (2007) ("[Under § 1500], the only safe alternative for a plaintiff is to file first in this court, and thereafter to file in district court."). Thus, as written, § 1500 actually encourages dual litigation against the government over the same matter.

■ How far, then, would the court advance the ball to say that same-day filings are *per se* pending for purposes of § 1500? Defendant's *per se* pending rule would merely require savvy plaintiffs to pause for the remainder of the day before filing an identical claim in another court. To be sure, a *per se* pending rule would grant the government a day's respite "from having to defend two lawsuits over the same matter simultaneously." (Though it would run contrary to the statute's plain language discussed above.) But, on these facts, a *per se* pending rule would merely solidify § 1500's status as a "trap for the unwary." *See id.* This court will not spring § 1500 on a *pro se* plaintiff, a litigant most decidedly not "in the know,"

where, as noted above, neither the statute's text nor precedent commands such a result.

■ As for defendant's policy arguments, the court can only reply that the " 'proper theater' for such arguments ... 'is the halls of Congress.' " *Keene Corp.,* 508 U.S. at 217, 113 S.Ct. 2035 (quoting *Smoot's Case,* 15 Wall. 36, 45, 21 L.Ed. 107</progadd, >, 8 Ct.Cl. 96 (1873)). The court is bound to construe jurisdictional statutes "with strict fidelity to their terms." *Stone v. Immigration & Naturalization Serv.,* 514 U.S. 386, 405, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995).

In sum, this court holds that it must follow the plain meaning of § 1500 to determine the exact order of plaintiff's filings before it can rule on defendant's motion to dismiss. On these facts, such a determination should not be difficult. This is not a situation where plaintiff simultaneously dispensed couriers with filings destined for two separate courts, which might necessitate deposing the couriers and court staff to determine the precise time that plaintiff's filings were complete.

In this case, plaintiff repeatedly claims that she filed in this court first and then dropped her petition for review in the Federal Circuit's night box. *See* Pl.'s Supp. Br. at 2–7. However, her affidavit merely states, "On MAY 5, 2008, I, RENEE R. BERRY, filed a Complaint with the U.S. Court of Federal Claims with the clerk prior to closing at 5:15 PM." Berry Aff. 1. Because the affidavit does not address the order of plaintiff's filings, plaintiff has failed to establish this court's jurisdiction by a preponderance of the evidence.

Nonetheless, in light of plaintiff's *pro se* status, this court will allow plaintiff the opportunity to submit a second affidavit or some other credible evidence. Plaintiff's affidavit or other credible evidence should unambiguously detail the sequence of her filings, i.e., whether she filed in this court's clerk's office *before or after* she dropped her petition for review in the Federal Circuit's night box. If plaintiff fails to provide such an affidavit or other evidence by March 13,

---

6. The other purpose is "to force plaintiffs to choose between pursuing their claims in [this court] or in another court." *Id.; Yankton Sioux*

*Tribe v. United States,* 84 Fed.Cl. 225, 229–30 (2008).

2009, the court will grant defendant's motion to dismiss. *See Taylor,* 303 F.3d at 1359. If, however, plaintiff is able to demonstrate that she filed her complaint in this court before filing her petition for review at the Federal Circuit, then § 1500 would not apply, and the court will deny defendant's motion to dismiss accordingly.[7] *See Tecon Eng'rs, Inc.,* 343 F.2d at 949.

■ Even if § 1500 does not apply, the court is concerned that it may, nevertheless, lack jurisdiction over this case and, thus, raises the issue *sua sponte. See, e.g., Folden v. United States,* 379 F.3d 1344, 1354 (Fed. Cir.2004) ("subject matter jurisdiction may be challenged at any time by the parties or by the court *sua sponte"); Consol. Coal Co. v. United States,* 351 F.3d 1374, 1378 (Fed. Cir.2003) ("under federal rules any court at any stage in the proceedings may address jurisdictional issues"). Plaintiff has identified the Tucker Act, 28 U.S.C. § 1491,[8] as the source of this court's subject matter jurisdiction. Pl.'s Resp. at 1; Pl.'s Supp. Br. at 1. However, plaintiff's "claim must also invoke a statute that mandates the payment of money damages" to "fall within the Tucker Act's jurisdictional grant." *Worthington v. United States,* 168 F.3d 24, 26 (Fed.Cir.1999). In addition, the court lacks jurisdiction over an otherwise valid Tucker Act claim, if the claim falls within the MSPB's appellate jurisdiction under the CSRA. *Gallo v. United States,* 529 F.3d 1345, 1348, 1352 (Fed.Cir.2008); *Worthington,* 168 F.3d at 26; *Romero v. United States,* 38 F.3d 1204, 1211 (Fed.Cir.1994) (all citing *United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988)).

Here, the court is unable to identify the money-mandating statute on which plaintiff's claim rests and, thus, is unable to determine whether plaintiff is presenting a valid Tucker Act claim. Assuming, without deciding, that plaintiff is presenting a valid Tucker Act claim, the claim may arguably fall within the MSPB's appellate jurisdiction. *See* 5 C.F.R. § 1201.3(a)(1) ("The [MSPB] has jurisdiction over appeals from agency actions when the appeals are authorized by law, rule, or regulation. These include appeals from ... [a][r]eduction in grade or removal for unacceptable performance...."). Thus, setting aside the possible application of § 1500, the court still holds grave doubts about whether it possesses jurisdiction over plaintiff's claim.

## IV. CONCLUSION

Accordingly, the court ORDERS the parties to FILE, by March 13, 2009, SUPPLEMENTAL BRIEFING on the additional jurisdictional issue identified above. Additionally, plaintiff also has until March 13, 2009, to produce any additional evidence concerning the sequence of her filings.

**IT IS SO ORDERED.**

---

7. The court notes that almost every judge that has applied § 1500 takes the opportunity to heap scorn upon it. Justice Stevens called it "a badly drafted statute" that "does not lend itself easily to sensible construction." *Keene Corp.,* 508 U.S. at 222, 113 S.Ct. 2035 (dissenting). This court agrees and hopes Congress will address the situation soon. In the meantime, this court will withhold judgment on defendant's motion to dismiss, and wait for plaintiff's additional evidence.

8. 28 U.S.C. § 1491(a)(1) provides, in pertinent part, "The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."